**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: September 11 2013

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 11-33423 |
| | ) | |
| Jessie Fitzgerald, Sr., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 11-3202 |
| | ) | |
| Auto-Owners Insurance Company, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Jessie Fitzgerald, Sr., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OF DECISION AND ORDER
### RE: MOTION FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on Plaintiff's Motion for Summary Judgment ("Motion") [Doc. # 20], Defendant's response [Doc. # 25], and Plaintiff's reply [Doc. # 27]. Defendant is a debtor in the underlying Chapter 7 case pending in this court. Plaintiff alleges in its complaint that a debt owed it by Defendant is nondischargeable under 11 U.S.C. § 524(a)(4) and (6). Plaintiff's motion for summary judgment addresses its claims seeking a declaration that it is subrogated to the rights of a probate estate and that a debt arising out of Defendant's administration of that estate should be excepted under § 523(a)(4) from his discharge.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I).

For the reasons that follow, Plaintiff's Motion will be set for oral argument on the sole issue of the application of the defalcation standard set forth in the United States Supreme Court's decision in *Bullock v. BankChampaign, N.A.*, –U.S.–, 133 S. Ct. 1754 ( 2013), to the facts in this proceeding as to which there is no genuine dispute.

## FACTUAL BACKGROUND

Defendant was appointed administrator of the probate estate of Andre L. Sneed ("decedent") in November 1996. [Doc. # 1, Complaint, ¶ 6; Doc. # 13, Answer, ¶ 6]. As a result, Defendant sought and received a fiduciary bond ("the Bond") from Plaintiff, naming the Lucas County, Ohio Court of Common Pleas, Probate Division ("Probate Court") as the obligee. [Complaint, ¶ 7; Answer, ¶ 7].

After the Probate Court proceeding was commenced, a paternity suit was filed by Lisa Mayberry on November 27, 1996, in the Lucas County, Ohio Court of Common Pleas, Juvenile Division ("Juvenile Court"), seeking to establish a parent-child relationship between her minor daughter and the decedent. In a March 3, 2004, judgment entry of the Juvenile Court, such parent-child relationship was established based on the results of DNA testing. [Pl. Ex. A, p. 2]. While the paternity suit was pending, Lisa Mayberry also filed a complaint to determine heirship in the Probate Court, alleging that her daughter is the sole heir at law of the decedent and that Defendant, the putative father of the decedent also claiming to be the sole heir, had never taken any steps required by law to establish his asserted relationship. [Pl. Ex. C]. On September 30, 2005, the Probate Court granted Lisa Mayberry's motion for summary judgment, "giving 'full faith and credit' to the juvenile court determination of paternity." [Pl. Ex. A, p. 2 and Ex. D]. Defendant filed no appeal in the heirship proceeding. [Pl. Ex. A, p. 2].

Thereafter, on January 18, 2006, after a hearing that Defendant attended with his attorney, the Probate Court granted Lisa Mayberry's motion to remove him as administrator of the decedent's estate. [Pl. Ex. F]. Based on Defendant's testimony that he intended to close the estate by distributing assets to himself, being of the opinion that he was the sole beneficiary of the estate notwithstanding the court's judgment in the heirship proceeding, the court found that he had an unresolved conflict of interest and did not intend to follow the directives of the court. [*Id.*]. As such, the Probate Court found that "the interests of [the] estate

demand his removal." [*Id.*]. Based on these findings, the Probate Court judgment was affirmed on appeal. [Pl. Ex. A].

After Defendant's removal as administrator, the Probate Court appointed Attorney Sarah McHugh to serve as administrator de bonis non ("successor administrator"). [Pl. Ex. F, p. 2]. Attorney McHugh filed a motion to surcharge Defendant with various claimed deficiencies before approving a final account and to enter judgment in the amount of the deficiency against Plaintiff Auto-Owners as surety. [Pl. Ex. G]. In her motion, Attorney McHugh argued, among other things, that Defendant wrongfully removed funds and property belonging to the estate and converted them to his own use and that attorney fees had been expended in trying to get him to comply with court orders. [*Id.* at ¶¶ 6 & 10]. Defendant filed a response to the motion to surcharge and attended a hearing on the motion at which he had the opportunity to offer testimony and evidence. [*See* Doc. # 25, p. 61; Pl. Exs. H & R, p. 24].

On March 25, 2009, the Probate Court entered its Findings of Facts and Conclusions of Law and Judgment Entry ("Surcharge Judgment"). Its findings of fact include the following: Defendant was removed as administrator for failing to follow the Probate Court's order to distribute estate proceeds to the rightful heir of the decedent; Defendant had a conflict of interest in that he claimed a right to the proceeds of the decedent's estate; Defendant had a duty to avoid self-dealing and is responsible for attorney fees and expenses paid by the estate that relate to his personal claims; Defendant did little to administer the estate and kept the estate open for his own personal benefit in pursuing his claim to estate assets; the majority of attorney fees incurred by the beneficiary of the estate and ordered by the court to be paid from estate proceeds would not have been incurred but for Defendant's self dealing; and the majority of the reasonable and necessary services of Attorney McHugh as successor administrator were the result of Defendant failing to complete his duties as administrator "rather [than] concentrating on advancing his own claims to the estate proceeds." [Pl. Ex. I, pp. 2-4]. The court specifically held, however, that issues concerning Defendant's failure to collect and dispose of estate assets that had been raised in connection with the court's review and approval of accounts filed by him were no longer subject to review by the motion to surcharge. [*Id.* at 4].

Nevertheless, based on its findings, the Probate Court concluded that Defendant "did not fulfill his duties as administrator in accordance with his oath, engaged in self-dealing and caused a waste of estate assets." [*Id.* at p. 5]. The Probate Court entered judgment in favor of the successor administrator of the estate and against Defendant as its former administrator and Plaintiff as surety in the amount of $148,029.76. [*Id.*]. That amount was derived as follows: 90 percent of the attorney fees expended by

3

Defendant as administrator, or $68,957.50; the fees incurred by the successor administrator, or $38,260.51; and 90 percent of the fees incurred by the beneficiary in prosecuting her claim after it was wrongfully rejected, or $40,811.75. [*Id.*]. With respect to the successor administrator's fees, the court found that only ten percent of her charges were for work that did not represent waste by Defendant. [*Id.* at 4-5]. The Probate Court's judgment was affirmed on appeal. [Pl. Ex. L].

Following payment by Plaintiff to the decedent's estate in full satisfaction of the Probate Court judgment, [Complaint, ¶ 13; Answer, ¶ 13], Plaintiff commenced a civil action against Defendant in the Lucas County Common Pleas Court based on Plaintiff's subrogated rights arising from its payment as Defendant's surety, [Pl. Exs. M, ¶ 2, and N]. Defendant filed an answer to the complaint. [Pl. Ex. O]. Plaintiff filed a motion for summary judgment in that action, which it served on Defendant, arguing that it is subrogated to the rights of the decedent's probate estate against Defendant. [Pl. Ex. P]. The Lucas County Common Pleas Court found the motion well taken and entered judgment against Defendant on Plaintiff's subrogation claim in the amount of $148,029.76, plus interest at 4 percent and the costs of the action ("Subrogation Judgment"). [Doc. # 1, Complaint, ¶ 16 and attached Ex. E; Doc. # 13, Answer, ¶ 16].

Defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code on June 21, 2011. Plaintiff timely commenced this adversary proceeding on October 6, 2011, by filing a complaint to determine dischargeability of the debt owed to it by Defendant.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue

4

for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.*

## II. Plaintiff's Motion for Summary Judgment

Plaintiff seeks a determination that the debt owed it by Defendant is nondischargeable under 11 U.S.C. § 523(a)(4), which excepts from a debtor's discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." According to Plaintiff, Defendant owes it a debt for defalcation while acting in a fiduciary capacity. A plaintiff that can show that it has been subrogated to the debt, as Plaintiff has in this case, may assert the nondischargeability thereof to the extent of the subrogation. *S.J. Groves & Sons Co. v. Peters (In re Peters)*, 90 B.R. 588, 604 (Bankr. N.D.N.Y. 1988); *Fireman's Fund Ins. Co. v. Dynda (In re Dynda)*, 19 B.R. 817, 818 (Bankr. M.D. Fla. 1982); *see*, *e.g.*, *Reitzel v. DeLong (In re DeLong)*, 228 B.R. 406 (Bankr. N.D. Ohio 1998). Defendant does not dispute that Plaintiff is subrogated to the rights of the estate of Andre Sneed, [Doc. # 1, Complaint, ¶ 20; Doc. # 13, Answer, ¶ 20], which is the declaration Plaintiff seeks in Count One of the complaint.

To prevail on its claim under §523(a)(4), Plaintiff must establish: "(1) a pre-existing fiduciary relationship, (2) a breach of that relationship, and (3) resulting loss." *Patel v. Shamrock Floorcovering Servs., Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009). A creditor must prove exceptions to dischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291(1991).

The Sixth Circuit has adopted a narrow interpretation of "fiduciary" as used in § 523(a)(4). *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997). In order to trigger the defalcation provision in § 523(a)(4), a debtor must hold funds in a trust for the benefit of a third party. *Id.* at 179. Furthermore, the types of trusts that will trigger the defalcation provision are "limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 180.

At issue in this case is a technical trust, which is defined as "a type of trust arising under a specific statute or the common law." *Maresh v. Maresh (In re Maresh)*, 277 B.R. 339, 348 (Bankr. N.D. Ohio 2001). It is undisputed that Defendant was appointed the administrator of Andre Sneed's probate estate. Under Ohio law, an administrator of a probate estate must collect the decedent's assets and hold them, pending distribution, for the benefit of the decedent's creditors and the beneficiaries of the probate estate. *See*, *e.g.*, Ohio Rev. Code §§ 2113.25, 2113.53, 2117.25; *cf. Fetzer v. Steele*, 130 N.E.2d 732, 735 (Ohio App. 1954) (stating that an executor holds decedent's property as trustee for the benefit of the creditors, legatees, and distributees). Thus, under the Ohio probate statutes, a specific res, the assets of the decedent, are placed

5

in the hands of the administrator for the benefit of third parties, the decedent's heirs. The court finds, and Defendant does not dispute, that this creates the technical trust relationship required under § 523(a)(4). *See Hash v. Reed (In re Reed)*, 155 B.R. 169, 172 (Bankr. S.D. Ohio 1993).

As to the second and third elements of its claim, breach of the fiduciary relationship and resulting loss, Plaintiff relies on the alleged collateral estoppel, or issue preclusion, effect of the state court judgments discussed above. Under 28 U.S.C. § 1738, the federal full faith and credit statute, a federal court must accord a state court judgment the same preclusive effect the judgment would have in state court. *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 703 (6th Cir. 1999). In determining whether the prior judgment should be given preclusive effect in a federal action, the federal court must apply the law of the state in which the prior judgment was rendered. *Id.* Thus, in this case, the court must apply Ohio issue preclusion principles.

Under Ohio law, there are four elements to the application of the doctrine of collateral estoppel: (1) a final judgment on the merits after a full and fair opportunity to litigate the issue; (2) the issue was actually and directly litigated in the prior action and must have been necessary to the final judgment; (3) the issue in the present suit must have been identical to the issue in the prior suit; and (4) the party against whom estoppel is sought was a party or in privity with the party to the prior action. *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002). "Issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *MetroHealth Medical Ctr. v. Hoffmann-LaRoche, Inc.*, 80 Ohio St. 3d 212, 217, 685 N.E.2d 529, 533 (1997). The person asserting collateral estoppel carries the burden of proving its requirements by a preponderance of the evidence. *A Packaging Service Co. v. Siml (In re Siml),* 261 B.R. 419, 422 (Bankr. N.D. Ohio 2001).

It is undisputed that Defendant was a party in the prior state court actions. There is also no dispute that the Surcharge Judgment and the Subrogation Judgment entered in state court are final judgments and that Defendant had a full and fair opportunity to respond in those proceedings. Defendant filed a response to the Surcharge Motion and attended the hearing on the motion, at which testimony and evidence was taken. In addition Defendant was served with Plaintiff's motion for summary judgment in the subrogation action. The fact that Defendant filed no response to the motion is of no consequence. It is only necessary that the opportunity to fully and fairly litigate an issue be available; it is not required that the party have exercised that opportunity. Thus, the first and fourth elements under *Sweeney* are satisfied.

As to the second and third elements, Plaintiff's assertion that Defendant owes it a debt for defalcation while acting in a fiduciary capacity is based upon losses incurred by the decedent's estate as a result of Defendant's breach of fiduciary duties as administrator of the estate. Defendant's breach of

6

fiduciary duties and the resulting losses are the same issues that were actually and directly litigated in the Probate Court in connection with the Surcharge Motion. Specifically, in the Surcharge Judgment, the court surcharged Defendant for losses incurred by the probate estate as a result of Defendant failing to fulfill his duties as administrator in accordance with his oath and for engaging in self-dealing and causing a waste of estate assets. As to these issues, the second and third elements under *Sweeney* also are satisfied.

Defendant nevertheless argues that collateral estoppel does not apply to the Surcharge Judgment because, in rendering its judgment, the Probate Court improperly considered accounts submitted for the estate and previously approved by the court. The court agrees with Plaintiff that the time to raise such an argument was in responding to the Motion to Surcharge and in Defendant's appeal of the Judgment granting the motion. His failure to do so or failure to prevail in state court on such an argument does not entitle him to relitigate the issues in this proceeding.

Defendant also argues that Plaintiff has failed to offer any evidence in the form of a trial transcript that shows what issues were actually litigated in the state court. However, such evidence is not necessary and Plaintiff has met its burden where the findings of fact and conclusions of law entered by the Probate Court, as well as the Motion to Surcharge, clearly demonstrate the issues litigated. Defendant further argues that collateral estoppel does not apply because Plaintiff has not offered any evidence in this proceeding that demonstrates Defendant's self-dealing or waste of estate assets. This argument is without merit as requiring such evidence would constitute the relitigation of issues finally determined by the state court, the prevention of which is the purpose of the doctrine of collateral estoppel.

Defendant also argues that collateral estoppel should not apply because the effects of temporary and permanent injunctions in the Probate Court were not litigated with respect to "allegations that his lack of involvement with [the personal and real property of the estate] cause[d] a diminution of the estate." [Doc. # 25, p. 26]. The Probate Court had enjoined Defendant from selling, transferring or disposing of any and all property of the estate without prior written consent of the Probate Court. [*See id.*, pp. 30, 50]. To the extent that Defendant's argument is that the injunctions had an effect on the value of the estate's personal and real property, and although the successor administrator alleged that a waste had occurred as a result of Defendant's failure to liquidate assets due to their depreciation over the ten-year period that he was administrator, [*see id.* at 48], the Surcharge Judgment does not impose liability for such diminution in value.

To the extent that Defendant's argument is a challenge to the Probate Court's determination that Defendant did not fulfill his duties as administrator in accordance with his oath and that only ten percent of the successor administrator's fees were for work that was not completed by Defendant and did not

7

represent any waste by Defendant as the former administrator, his argument is simply an attempt to relitigate the Probate Court's determination. The doctrine of collateral estoppel precludes such an argument.

Plaintiff having satisfied all elements under *Sweeney,* Defendant may not relitigate, as he attempts to do, issues decided by the Probate Court relating to his breach of fiduciary duties that include failing to fulfill his duties as administrator, engaging in self-dealing and causing a waste of assets. In addition, Defendant is estopped from challenging the Probate Court's determination of losses incurred by the probate estate as a result of Defendant's breaches.

Not every breach of fiduciary duty, however, constitutes a "defalcation" within the meaning of § 523(a)(4). At the time Plaintiff's Motion and the parties' briefs in support of their respective positions were filed, the standard employed by the Sixth Circuit for finding a "defalcation" was an objective standard, which required a showing that a debtor was "objectively reckless." *Patel,* 565 F.3d at 970 (citing *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 257 (6th Cir. 1982)). Thus, a defalcation could be found "even without a subjective mental state evidencing intent to breach a known fiduciary duty or bad faith in doing so." *Johnson*, 691 F.2d at 256. However, because the United States Supreme Court granted certiorari in *Bullock v. BankChampaign, N.A.*, 670 F.3d 1160 (11th Cir. 2012), *cert granted,* 133 S.Ct. 526 (2012), to resolve a conflict among federal circuits as to the meaning of "defalcation" in § 523(a)(4), this court entered an order holding Plaintiff's Motion in abeyance pending the Supreme Court's decision in that case.

On May 13, 2013, the Supreme Court rendered its decision. *Bullock v. BankChampaign, N.A.*, – U.S. –, 133 S. Ct. 1754 (2013). In *Bullock*, the Supreme Court rejected the objectively reckless standard employed by the lower court, interpreting "defalcation" as follows:

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. . . . That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."

*Bullock*, 133 S. Ct. at 1759-60. As this standard is a higher standard than that previously employed by the Sixth Circuit, the court will set Plaintiff's Motion for oral argument solely on the issue of the application

of the *Bullock* standard to facts in this proceeding as to which there is no genuine dispute.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that oral argument is scheduled on **October 3, 2013, at 3:00 p.m.**, on the sole issue of the application of the defalcation standard set forth in *Bullock v. BankChampaign, N.A.*, –U.S.–, 133 S. Ct. 1754 (2013), to the facts in this proceeding as to which there is no genuine dispute.

###