**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 20 2014**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 11-33423 |
| | ) | |
| Jessie Fitzgerald, Sr., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 11-3202 |
| | ) | |
| Auto-Owners Insurance Company, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Jessie Fitzgerald, Sr., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OF DECISION AND ORDER
### RE: MOTION FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on Plaintiff's Motion for Summary Judgment ("Motion") [Doc. # 20], Defendant's response [Doc. # 25], and Plaintiff's reply [Doc. # 27]. Defendant is the debtor in the underlying Chapter 7 case pending in this court. Plaintiff alleges in its complaint that a debt owed it by Defendant is nondischargeable under 11 U.S.C. § 523(a)(4) and (6). Plaintiff's Motion addresses its claims seeking a declaration that it is subrogated to the rights of a probate estate (Count 1) and that a debt arising out of Defendant's administration of that estate should be excepted from his discharge under § 523(a)(4) as a debt for defalcation while acting in a fiduciary capacity (Count 2).

At the time Plaintiff's Motion and the parties' briefs in support of their respective positions were filed, the standard employed by the Sixth Circuit for finding a "defalcation" was an objective standard. Because the United States Supreme Court subsequently rendered its decision in *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013), addressing the meaning of "defalcation" in § 523(a)(4) and rejecting an objective standard, this court entered on September 11, 2013, a Memorandum of Decision addressing the parties' various arguments but scheduled oral argument on the sole issue of the application of the defalcation standard set forth in *Bullock* to the Motion. [*See* Doc. # 31].

Having considered the parties' oral arguments, for the following reasons, as well as those set forth in the court's Memorandum of Decision entered on September 11, 2013, Plaintiff's Motion will be granted as to its subrogation claim but denied as to its claim under § 523(a)(4).

## FACTUAL BACKGROUND

The following facts are undisputed. Defendant was appointed administrator of the probate estate of Andre L. Sneed ("decedent") in November 1996. [Doc. # 1, Complaint, ¶ 6; Doc. # 13, Answer, ¶ 6]. As a result, Defendant sought and received a fiduciary bond ("the Bond") from Plaintiff, naming the Lucas County, Ohio Court of Common Pleas, Probate Division ("Probate Court") as the obligee. [Complaint, ¶ 7; Answer, ¶ 7].

After the Probate Court proceeding was commenced, a paternity suit was filed by Lisa Mayberry ("Mayberry") on November 27, 1996, in the Lucas County, Ohio Court of Common Pleas, Juvenile Division ("Juvenile Court"), seeking to establish a parent-child relationship between the decedent and Mayberry's minor daughter. In a March 3, 2004, judgment entry of the Juvenile Court, such parent-child relationship was established based on the results of DNA testing. [Pl. Ex. A, p. 2]. While the paternity suit was pending, Mayberry also filed a complaint to determine heirship in the Probate Court, alleging that her daughter is the sole heir at law of the decedent and that Defendant, the putative father of the decedent also claiming to be the sole heir, had never taken any steps required by law to establish his asserted relationship. [Pl. Ex. C]. On September 30, 2005, the Probate Court granted Mayberry's motion for summary judgment, "giving 'full faith and credit' to the juvenile court determination of paternity." [Pl. Ex. A, p. 2 and Ex. D]. Defendant filed no appeal in the heirship proceeding. [Pl. Ex. A, p. 2].

Thereafter, on January 18, 2006, after a hearing that Defendant attended with his attorney, the Probate Court granted Mayberry's motion to remove him as administrator of the decedent's estate. [Pl. Ex. F]. Based on Defendant's testimony that he intended to close the estate by distributing assets to himself, and on his opinion that he was the sole beneficiary of the estate notwithstanding the court's judgment in the

heirship proceeding, the Probate Court found that he had an unresolved conflict of interest and did not intend to follow the directives of the court. [*Id.*]. As such, the Probate Court found that "the interests of [the] estate demand his removal." [*Id.*]. Based on these findings, the Probate Court judgment was affirmed on appeal. [Pl. Ex. A].

After Defendant's removal as administrator, the Probate Court appointed Attorney Sarah McHugh to serve as administrator de bonis non ("successor administrator"). [Pl. Ex. F, p. 2]. Attorney McHugh filed a motion to surcharge Defendant with various claimed deficiencies before approving a final account and to enter judgment in the amount of the deficiency against Plaintiff Auto-Owners Insurance Company as surety. [Pl. Ex. G]. In her motion, Attorney McHugh argued, among other things, that Defendant wrongfully removed funds and property belonging to the estate and converted them to his own use and that attorney fees had been expended in trying to get him to comply with court orders. [*Id.* at ¶¶ 6 & 10]. Defendant filed a response to the motion to surcharge and attended a hearing on the motion at which he had the opportunity to offer testimony and evidence. [*See* Doc. # 25, p. 61; Pl. Exs. H & R, p. 24].

On March 25, 2009, the Probate Court entered its Findings of Facts and Conclusions of Law and Judgment Entry ("Surcharge Judgment"). Its findings of fact include the following: Defendant was removed as administrator for failing to follow the Probate Court's order to distribute estate proceeds to the rightful heir of the decedent; Defendant had a conflict of interest in that he claimed a right to the proceeds of the decedent's estate; Defendant's attorneys never brought to the Probate Court's attention the conflict in their representation of Defendant as administrator of the decedent's estate and representation of Defendant in his claim to the estate proceeds; Defendant had a duty to avoid self-dealing and is responsible for attorney fees and expenses paid by the estate that relate to his personal claims; Defendant did little to administer the estate and kept the estate open for his own personal benefit in pursuing his claim to estate assets; the majority of attorney fees incurred by the beneficiary of the estate and ordered by the court to be paid from estate proceeds would not have been incurred but for Defendant's self dealing; and the majority of the reasonable and necessary services of Attorney McHugh as successor administrator were the result of Defendant failing to complete his duties as administrator "rather [than] concentrating on advancing his own claims to the estate proceeds." [Pl. Ex. I, pp. 2-4]. The Probate Court specifically held, however, that issues concerning Defendant's failure to collect and dispose of estate assets had been raised in connection with the court's review and approval of accounts filed by him and that, in approving the accounts, the Probate Court "approved the actions of the fiduciary." [*Id.* at 4]. The Probate Court thus found those matters were no longer subject to review by the motion to surcharge. [*Id.*].

Nevertheless, based on its findings, the Probate Court concluded that Defendant "did not fulfill his duties as administrator in accordance with his oath, engaged in self-dealing and caused a waste of estate assets." [*Id.* at p. 5]. The Probate Court entered judgment in favor of the successor administrator of the estate and against Defendant as its former administrator and Plaintiff as surety in the amount of $148,029.76. [*Id.*]. That amount was derived as follows: 90 percent of the attorney fees expended by Defendant as administrator, or $68,957.50; the fees incurred by the successor administrator, or $38,260.51; and 90 percent of the fees incurred by the beneficiary in prosecuting her claim after it was wrongfully rejected, or $40,811.75. [*Id.*]. With respect to the successor administrator's fees, the court found that only ten percent of her charges were for work that did not represent waste by Defendant. [*Id.* at 4-5]. The Probate Court's judgment was affirmed on appeal. [Pl. Ex. L].

In 1996, in connection with Defendant's appointment as administrator of the decedent's estate, Plaintiff issued the Bond. [Pl. Ex. J]. Plaintiff was obligated under the terms of the Bond if Defendant failed to perform his duties as fiduciary of the decedent's estate, or performed them "tardily, negligently, or improperly," or if he misused or misappropriated estate assets or improperly converted them to his own use or the use of another. [*Id.*] Following payment by Plaintiff to the decedent's estate in full satisfaction of the Probate Court's Surcharge Judgment, [Complaint, ¶ 13; Answer, ¶ 13], Plaintiff commenced a civil action against Defendant in the Lucas County Common Pleas Court based on Plaintiff's subrogated rights arising from its payment as Defendant's surety, alleging that such payment was the result of Defendant failing to properly administer the decedent's estate and causing unnecessary attorney fees to be paid from the estate. [Pl. Exs. M, ¶ 2, and N]. Defendant filed an answer to the complaint. [Pl. Ex. O]. Plaintiff filed a motion for summary judgment in that action, which it served on Defendant, arguing that it is subrogated to the rights of the decedent's probate estate against Defendant. [Pl. Ex. P]. The Lucas County Common Pleas Court found the motion well taken and entered judgment against Defendant on Plaintiff's subrogation claim in the amount of $148,029.76, plus interest at 4 percent and the costs of the action. [Doc. # 1, Complaint, ¶ 16 and attached Ex. E; Doc. # 13, Answer, ¶ 16].

In opposition to Plaintiff's Motion for Summary Judgment, Defendant offers, among other things, his affidavit, stating in relevant part as follows:

> [3] That at all times in regards to the issuance of the number of checks to the various lawyers that represented me in the administration of the assets of the [decedent], I was instructed by either the attorney or the Probate Court Judge Puffenberger to issue payment for various legal services rendered.
>
> [4] That at all times I never instructed the various attorneys who represented the interest of

4

the estate of the [decedent] to do any legal act or deed that was for my personal benefit as administrator or as the father of [decedent].

[5] That at all times, the Lucas County Probate Court approved the amount of attorney fees and hours spent by the various attorneys and such calculations and subsequent payment of attorney fees or costs were not of my personal direction.

[6] That at all times, I followed the instructions of the various attorneys in regards to the work, which they did and for which they concluded was needed and necessary to properly administer the estate assets of the [decedent] or legal matters attended or deemed related thereto.
. . .

[9] That I never directed or instructed any of the attorneys involved in this case to do or not to do any act that would jeopardize or compromise the assets of the estate of the [decedent].

[Doc. # 25, pp. 80-81/83, Ex. 14].

Defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code on June 21, 2011. Plaintiff timely commenced this adversary proceeding by filing its complaint to determine dischargeability of the debt owed to it by Defendant.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

### II. Plaintiff's Motion for Summary Judgment

Plaintiff seeks a determination that the debt owed it by Defendant is nondischargeable under 11 U.S.C. § 523(a)(4), which excepts from a debtor's discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." According to Plaintiff, Defendant owes it a debt for defalcation while acting in a fiduciary capacity. A plaintiff that can show that it has been subrogated to the debt, as Plaintiff has in this case, may assert the nondischargeability thereof to the extent of the subrogation. *S.J. Groves & Sons Co. v. Peters (In re Peters)*, 90 B.R. 588, 604 (Bankr. N.D.N.Y. 1988); *Fireman's Fund Ins. Co. v. Dynda (In re Dynda)*, 19 B.R. 817, 818 (Bankr. M.D. Fla. 1982); *see*, *e.g.*, *Reitzel v. DeLong (In re DeLong)*, 228 B.R. 406 (Bankr. N.D. Ohio 1998). Defendant does not dispute that Plaintiff is subrogated to the rights of the estate of decedent Andre Sneed, [Doc. # 1, Complaint, ¶ 20; Doc. # 13, Answer, ¶ 20], which is the declaration Plaintiff seeks in Count One of the complaint.

To prevail on its claim under §523(a)(4), Plaintiff must establish: (1) a pre-existing fiduciary relationship, (2) a breach of that relationship that constitutes a defalcation, and (3) resulting loss. *See Patel v. Shamrock Floorcovering Servs., Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009). A creditor must prove exceptions to dischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291(1991).

In its prior Memorandum of Decision, the court found that the first element of Plaintiff's § 523(a)(4) claim was satisfied. There being no facts in dispute, the court found under Ohio law that Defendant, as administrator of the decedent's estate, was a fiduciary of a technical trust as is required under § 523(a)(4). [*See* Doc. # 31, pp. 5-6 (citing Ohio Rev. Code §§ 2113.25, 2113.53, 2117.25); *Fetzer v. Steele*, 130 N.E.2d 732, 735 (Ohio App. 1954) (stating that an executor holds decedent's property as trustee for the benefit of the creditors, legatees, and distributees); *Hash v. Reed (In re Reed)*, 155 B.R. 169, 172 (Bankr. S.D. Ohio 1993) (finding debt owed by debtor as administrator of probate estate fell within exception to discharge for defalcation while acting in a fiduciary capacity)].

In its prior Memorandum of Decision, applying the elements set forth in *Sill v. Sweeney (In re Sweeney),* 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002), for application of the doctrine of collateral estoppel, the court also found that the Probate Court's Surcharge Judgment precluded Defendant from re-litigating in this court issues decided by the Probate Court relating to his breach of fiduciary duties that include failing to fulfill his duties as administrator, engaging in self-dealing and causing a waste of assets. [*See* Doc. # 31, pp. 7-8]. In addition, the court found that Defendant is estopped from challenging the Probate Court's determination of losses incurred by the probate estate as a result of Defendant's breaches. [*Id.*].

The sole issue remaining is whether the undisputed facts before the court are sufficient for the court

to conclude that Defendant's breaches of fiduciary duty as set forth in the Surcharge Judgment constitute "defalcations" within the meaning of § 523(a)(4) as interpreted by the United States Supreme Court in *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013). As one bankruptcy court applying *Bullock* observes, "not all breaches of fiduciary duty rise to the level of a defalcation under § 523(a)(5)." *Fogg v. Pearl (In re Pearl)*, 502 B.R. 429, 442 (Bankr. E.D. Pa. 2013).

In *Bullock*, the Supreme Court rejected the objectively reckless standard employed by the lower court, which was also the standard previously employed by the Sixth Circuit. Instead, the Supreme Court interpreted "defalcation" as follows, requiring a culpable state of mind:

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. . . . That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."

*Bullock*, 133 S. Ct. at 1759-60.

Plaintiff argues that the Surcharge Judgment and the Probate Court's January 18, 2006, order removing Defendant as administrator of the decedent's estate show that he acted in bad faith in attempting to thwart the minor beneficiary's right to the assets of the probate estate or, at a minimum, that he acted with conscious disregard of his fiduciary duties. To an extent, the court agrees. The Probate Court's order removing Defendant as administrator shows only that he had the requisite mental state under *Bullock* after September 30, 2005. The Probate Court stated in its opinion that Defendant testified that it was his intention to close the estate and distribute assets to himself, notwithstanding the Probate Court's September 30, 2005, ruling that the Mayberry child was the sole heir of the decedent's estate. The Probate Court's order thus shows Defendant's bad faith in the manner in which he proceeded, or at least intended to proceed, *after* the heirship ruling. However, the debt owed to Plaintiff is not limited to damages or loss to the estate that occurred after the heirship ruling on September 30, 2005. The Probate Court's January 18, 2006, order does not otherwise address Defendant's mental state. Likewise, as discussed below, the Surcharge Judgment does not address Defendant's mental state with respect to his breaches of fiduciary duties.

The Probate Court based the $148,029.76 surcharged amount on its findings that Defendant did not

fulfill his duties as administrator in accordance with his oath, engaged in self-dealing and caused a waste of assets, all of which were in turn based upon payment by the estate of attorney fees and expenses that related to Defendant's personal claims, Defendant's failure to complete the administration of the decedent's estate and its conclusion that the estate was kept open for the personal benefit of Defendant. None of these findings, however, explicitly nor implicitly required under Ohio law a mental state involving bad faith or other culpable conduct described in *Bullock*. *See Squire v. Emsley*, 137 Ohio St. 26, 57 (1940) (stating that a trustee may be surcharged for self-dealing, "notwithstanding any claim that he has acted in good faith"); *Jones v. Elsea*, No. 02-CA027, 2003 WL 22133294, *5 -6, 2003 Ohio App. LEXIS 4423, *17 (Ohio App. Sept. 12, 2003) (same). Similar to the "nonprofessional trustee" in *Bullock*, this is especially true where there is no evidence that Defendant had any special knowledge regarding, or experience in dealing with, probate proceedings and was represented by counsel throughout the probate proceeding. *Cf. Fidelity Nat'l Title Ins. Co. v. Colson (In re Colson)*, No. 09-51954-NPO, 2013 WL 5352638, *32, 2013 Bankr. LEXIS 4001, *95-96 (Bankr. S.D. Miss. 2013) (applying *Bullock* and finding Debtor's violation of fiduciary duty to lenders sufficiently reckless where he was an experienced title agent and lawyer); *Parisi v. D'Urso (In re D'Urso)*, No. 05-22274, Adv. No. 12-1685, 2013 WL 3286222, 10, 2013 Bankr. LEXIS 2632, 28-29 (Bankr. D.N.J. 2013) (applying *Bullock* and considering that debtor was a sophisticated businessman in finding that his failure to observe the state's Rent Security Deposit Act constituted a defalcation).

Moreover, there being no basis for issue preclusion on this issue, the court finds Defendant's affidavit creates a genuine dispute of fact as to his mental state. Defendant avers that the issuance of checks to his attorneys was at the instruction of his attorneys and/or the Probate Court judge, that he never instructed his attorneys to do any act for his personal benefit, that he followed the instructions of his attorneys at all times with respect to work in administering the estate assets, and that he never instructed his attorneys to do any act that would compromise the estate assets. *See Jantz v. Karch (In re Karch)*, 501 B.R. 403, 409 (Bankr. D. Colo. 2013)($45,953.16 surcharge of personal representative of father's probate estate determined after trial to be dischargeable debt when fiduciary/debtor consulted and relied on counsel in making distributions). These averments do not contradict any finding in the Surcharge Judgment, which itself expresses concern over counsel's representation of Defendant in the probate proceeding. The court concludes, therefore, based on the evidence before it, that Plaintiff is not entitled to judgment as a matter of law on its § 523(a)(4) claim because there are genuine issues of material fact as to Defendant's state of mind in committing the acts that resulted in the Surcharge Judgment.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 20] be, and hereby is, **GRANTED** as to Plaintiff's subrogation claim (Count 1) and **DENIED** as to its claim under 11 U.S.C. § 523(a)(4) (Count 2). A further pretrial conference on the complaint will be set by separate order of the court.

###